## Cooperman and Woods, Inc. v. Weikel

*Jerome M. Libenson,* for plaintiff.

*Edward F. Urbanik,* for defendant.

WESSEL, J., July 22, 1965.—This matter is before the court on defendants' motion to strike a judgment entered by confession.

The instrument involved is a written contract captioned "Mortgage Application", which, in effect, authorized plaintiff, Cooperman and Woods, Inc., to negotiate a first mortgage loan in the amount of $4,900, to be secured by a first mortgage and accompanying bond upon the property of defendants. The instrument provides:

"We authorize and direct you to pay our following debts from the proceeds of this loan. In the event any prior liens are disclosed at the closing, you are further authorized and directed to pay said liens prior to paying the listed debts. In the event that the loan requested is insufficient to pay all liens and costs, we agree to pay all costs, attorney fees and expenses incurred by you".

Following this is a list of creditors to be paid, including $590 to be paid to plaintiff as a service fee, and then a confession of judgment clause.

Defendants take the position that this contract is null and void because it violates sec. 899 of The

Penal Code, which prohibits contracts for "debt pooling". The Act of June 24, 1939, P. L. 872, sec. 899, added August 8, 1961, P. L. 970, sec. 1, provides:

"(a) For the purpose of this section:

"(1) 'Debtor' shall mean a person who owes an obligation or debt to another whether such is repayable in installments or otherwise.

"(2) 'Creditor' shall mean a person to whom a debt or obligation is owed from another whether such is payable in installments or otherwise.

"(3) 'Debt pooling' shall mean the making of a contract, express or implied, with a debtor or debtors whereby the debtor agrees to pay a sum of money periodically or otherwise to another person for the purpose of having such other person distribute the same among certain specified creditors in accordance with a plan agreed upon, or to be agreed upon, and whereby such other person shall receive a consideration for any such services rendered, or to be rendered, in connection therewith.

"(b) Any person engaged in the business of debt pooling shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500) or to imprisonment in the county jail for not more than thirty (30) days, or both. Any contract for debt pooling shall be void and unenforceable.

"(c) The provisions of this act shall not apply to any person who is admitted to practice before the Supreme Court of Pennsylvania or any court of common pleas within the State nor to any partnership, all the members of which are admitted to practice before the Supreme Court of Pennsylvania or any court of common pleas within the State, nor shall it apply to Better Business Bureaus, Legal Aid Societies, or welfare agencies who act without compensa-

tion or profit on behalf of debtors as debt adjusters or debt poolers".

After examining the instrument involved, the court is drawn to the conclusion that the agreement is not a mortgage agreement, as the caption would indicate. On the contrary, it specifically authorizes plaintiff to pay the enumerated debts, including an exorbitant fee to themselves.

Plaintiff argues that it was not to have any contact with the creditors, but its own contract contradicts that statement. In addition, the instrument provides that all verbal agreements, understandings and representations are merged in the written instrument. Accordingly, this court is compelled to look solely to the instrument in making its determination. It takes no stretch of the imagination, after examining the agreement, to reach the conclusion that it is patently obvious that the agreement is in violation of The Penal Code, cited supra. Consequently, little discussion is necessary.

The agreement provides that defendants (debtor) are to pay sums of money to another (plaintiff) for the purpose of having plaintiff distribute this money among certain specified creditors in accordance with a plan agreed upon. In addition, plaintiff was to receive compensation for this service. Plaintiff argues that the service fee was solely for the obtaining of the mortgage loan; however, we find no such provision in the mortgage application agreement. Consequently, where the language of a written document is ambiguous or its meaning doubtful, in determining the intention of the parties, the writing must be construed most strongly against the party drafting it, and the interpretation which makes a rational and probable agreement must be preferred. See Unit Vending Corporation v. Lacas, 410 Pa. 614 (1963).

In any event, the court will not permit a cleverly

drafted instrument to circumvent the penal laws of this Commonwealth. The motion to strike the judgment must, therefore, be granted.

ORDER OF COURT

And now, to wit, July 22, 1965, for the foregoing reasons, and upon consideration of counsel's arguments and briefs, the rule heretofore granted in the above proceeding is made absolute and the judgment heretofore entered shall be stricken.